UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDISON L. CATOTA PALLO,

Petitioner,

-v-

LAWRENCE CATLETTI *et al.*,

Respondents.

26 Civ. 6128 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* habeas corpus petition by petitioner Edison L. Catota Pallo, a noncitizen in immigration detention. On July 2, 2026, Catota Pallo, a citizen of Ecuador who was paroled into the United States, was detained by U.S. Immigration and Customs Enforcement ("ICE" or "Respondents"), based on his 2025 conviction on a state criminal assault charge. Catota Pallo challenges his on-going detention by ICE as unconstitutional, contending that no changes to his individual circumstances justify the decision to detain him. ICE opposes, maintaining that, notwithstanding the Circuit's decision in *Barbosa da Cuhna v. Freden*, 175 F.4th 61 (2d Cir. 2026), Catota Pallo's detention is proper under 8 U.S.C. § 1225(b)(2)(A), and, in the alternative, that it exercised sufficient individualized discretion in detaining him so as to afford him the process he is due under § 1226(a).

For the reasons that follow, the Court grants in part and denies in part the Petition. The Court finds: that (1) Catota Pallo's detention is governed by § 1226(a), not § 1225, requiring ICE to have made an individualized custody determination prior to detaining Catota Pallo; (2) ICE made an individualized custody determination before detaining Catota Pallo, thus comporting with § 1226(a) and due process; and (3) Catota Pallo is entitled to a prompt bond hearing under

§ 1226(a), and because no such hearing has yet been held, the Government must provide him, forthwith, with a bond hearing before an immigration judge ("IJ") .

## I. Background

On November 29, 2024, at approximately 1:08 p.m., Catota Pallo attempted to enter the United States via El Paso, Texas, was charged as inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), and was released on parole into the United States. Dkt. 12 ("Charles Decl.") ¶¶ 4–5; Dkt. 13-1 ("I-213") at 2. On January 24, 2025, Catota Pallo filed an application for asylum. Dkt. 1 ("Petition") at 27. On May 19, 2025, Catota Pallo was arrested by the New York City Police Department ("NYPD") for assault in the third degree, in violation of New York Penal Law § 120.00, and arraigned in Queens County Criminal Court. Dkt. 13-3 at 5. That same day, ICE filed an immigration detainer with the NYPD. Charles Decl. ¶ 10. The detainer, directed to Queens "Central Booking," stated that the Department of Homeland Security ("DHS") had determined that there was probable cause that Catota Pallo was removable, and that:

> Consistent with the "policy of the United States to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people," set forth in Executive Order 14159, Protecting the American People Against Invasion, DHS requests cooperation regarding the subject who: . . .
>
> is subject to the detainer provision of the Laken Riley Act and is required to be effectively and expeditiously taken into custody by DHS pursuant to 8 U.S.C. § 1226(c)(3); [and]
>
> otherwise poses a risk to national security, border security, or public safety.

Dkt. 13-4 at 1.

ICE represents that the detainer was not "honored," and Catota Pallo was released from state custody without notice to federal immigration officials. Charles Decl. ¶ 10. On July 31, 2025, Catota Pallo pled guilty to assault in the third degree, and was sentenced to a conditional

discharge and an order of protection. *Id.*[1] ICE represents that it then forwarded Catota Pallo's information to its Fugitive Operations division for further investigation. *Id.*

On April 2, 2026, Catota Pallo, proceeding *pro se*, appeared before an IJ for a master calendar hearing. *Id.* ¶ 11. The hearing was rescheduled for April 9, 2026. *Id.* At it, Catota Pallo "conceded the charge of [his] removability." *Id.* ¶ 12. Accordingly, the IJ sustained the charge of removability, and scheduled another hearing. *Id.* On April 24, 2026, Catota Pallo's parole—under which he had been admitted to the United States in 2024—expired. *Id.* ¶ 5.

On May 18, 2026, ICE issued a warrant for Catota Pallo's arrest (a Form I-200), "in anticipation of a future administrative arrest due to his July 2025 criminal conviction." *Id.* ¶ 13. On July 2, 2026, ICE's Fugitive Operations team conducted a "targeted enforcement action" in Flushing, New York, in which Catota Pallo was the "primary target." *Id.* ¶ 14. ICE officers—visibly identified as "POLICE," "ERO," and "ICE"—approached a male who matched Catota Pallo's physical description. *Id.* Once the individual confirmed he was Catota Pallo, ICE arrested him pursuant to the I-200 and served him with a copy of the I-200. That day, Catota Pallo was transported to 26 Federal Plaza in New York, New York for processing. *Id.* ¶ 15.

During processing, ICE assessed, on a preliminary basis, that Catota Pallo would remain detained, noting on its "*Velesaca* worksheet"[2] that he had pending charges for assault and that no forms of release were possible. *Id.* ICE contends that its officers thus processed Catota Pallo

[1] In his Petition, Catota Pallo represents that he "had no criminal record." Petition ¶ 2. Catota did not file a reply after respondents' return to the Court's order to show cause, which demonstrated the contrary.

[2] A *Velesaca* worksheet—the name derives from the class-action lawsuit *Velesaca v. Decker*, 458 F. Supp. 3d 224 (S.D.N.Y. 2020)—is an internal risk-assessment tool ICE uses to determine whether a detained noncitizen should be granted bond, released on conditional parole, or detained without bond while awaiting immigration court proceedings.

"under § 1226," although ICE now asserts that in fact, his "detention is governed by 8 U.S.C. § 1225(b)(2)(A)." Dkt. 13 ("Opp'n.") at 2. ICE acknowledges that its officers erred in noting, at the time of his arrest, that Catota Pallo had "pending" criminal assault charges when, in fact, although that charge had been pending at the time the first detainer was lodged, Catota Pallo had been convicted of this charge in July 2025. *Id.*; *see* Charles Decl. ¶ 10.

## II. Applicable Legal Standard

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *see also Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025).[3]

## III. Discussion

At the outset, the Court must determine whether § 1225 or § 1226 governs Catota Pallo's detention, as that issue bears on the ensuing process due to the noncitizen upon arrest.

ICE maintains that Catota Pallo is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Opp'n. at 1. It argues that the Circuit's decision in *da Cuhna* is inapposite, because Catota Pallo, unlike the petitioner in *da Cunha*, had been apprehended at the border and then paroled into the United

[3] As to whether this case is properly litigated in this Court—as opposed to another District—respondents initially, on July 24, 2026, notified the Court that it believed venue in this District may be improper as the Petition had been filed after Catota Pallo had left this District and was being detained in the Northern District of Indiana. Dkt. 5. That day, the Court issued an order reporting that its Office of Pro Se litigation had received the instant Petition on July 20, 2026 at 12:03 p.m. Dkt. 7. On July 27, 2026, in light of its inability to squarely establish that Catota Pallo had been taken out of this District as of the time of his filing, Respondents, changing course, stated that they waived any challenge to venue in this action "without waiver or prejudice to the government's position in any similar or dissimilar case." Dkt. 8 at 1.

States. *Id*. at 3–4. It argues that, when his parole terminated in April 2026, he reverted to being an "applicant for admission," allowing ICE to detain him under § 1225(b) as though he had been apprehended "at the 'threshold of initial entry.'" *Id*. at 4. ICE argues that, even though its personnel processed Catota Pallo as if his detention was covered by § 1226(a), that was error. *Id*. at 2; Charles Decl. ¶ 15.

The Court finds that Catota Pallo's detention is governed by § 1226(a), for two reasons. First, ICE's real-time statements as to the basis of Catota Pallo's detention are instructive. *See Bernal Morales v. Joyce et al.,* No. 26 Civ. 6723 (PAE), 2026 WL 2445050, at *2 (S.D.N.Y. Aug. 20, 2026) (collecting cases where ICE "reversed course" to assert detention under § 1225 when challenge was brought to a detention it categorized in real time as under § 1226(a)); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 467–69 (S.D.N.Y. 2025) (Engelmayer, J.) (using ICE's statements at time of arrest to resolve which statute governs). Here, ICE states that during Catota Pallo's initial processing, officers "conducted an initial custody determination pursuant to 8 U.S.C. § 1226(a)," completed a *Velesaca* worksheet, and "processed [Catota Pallo] under § 1226(a)." Charles Decl. ¶ 15. ICE thus clearly treated Catota Pallo' s detention as governed by § 1226(a). Second, under principles of statutory interpretation, § 1226(a), not § 1225(b), applies to the arrests of noncitizens who had earlier entered the United States and thereafter remained in the country pending removal. *See Bernal Morales*, 2026 WL 2445050, at *3–4 (citing "vast majority" of district courts who have rejected the construction ICE advances as to Catota Pallo). The Court therefore holds, consistent with the majority of judges in the District to consider this point and with a growing number of district judges elsewhere, that § 1225(b)(2)(A) does not authorize a paroled noncitizen's confinement after the expiration of his parole, and that Catota Pallo's arrest under these circumstances is instead governed by § 1226(a). *See id*. at *5; *Qasemi*

*v. Francis*, No. 25 Civ. 10029, 2025 WL 3654098, at *11–12 (S.D.N.Y. Dec. 17, 2025); *Olivier v. Mullin*, No. 26 Civ. 4561, 2026 WL 2350274, at *2 (E.D.N.Y. Aug. 13, 2026); *Casallos v. Moldonado*, No. 26 Civ. 4175, 2026 WL 2267789, at *5–6 (E.D.N.Y. Aug. 6, 2026).

Having found that Catota Pallo's detention is governed by § 1226(a), the Court considers whether his arrest was based on "an initial discretionary determination," so as to satisfy due process. *Qasemi*, 2025 WL 3654098, at *5. Under § 1226(a) and its implementing regulations, ICE officials, before detaining a noncitizen under that authority, must make an "individualized custody determination" and thereafter make available a bond hearing. 8 C.F.R. § 1236(d)(1). Under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1979), ICE breaches that obligation when it makes a custody determination without any "individualized assessment." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Here, however, ICE has shown that it conducted a "individualized" assessment. Since alerting to Catota Pallo's 2025 arrest, it has consistently assessed him as a threat to public safety. *See, e.g.*, Charles Decl. ¶¶ 10–14. For that reason, it issued a detainer for him in May 2025 based on the then-pending charge against him; it forwarded information about him to ICE's Fugitive Operations; it issued an additional detainer for him in May 2026; and it conducted a "targeted enforcement action" in July 2026 to effect his arrest. *Id*. ICE also represents it "conducted an initial custody determination for Catota Pallo," completed an individualized risk-assessment worksheet, and ultimately "processed" him under § 1226(a). *Id*. ¶ 15. Taken as a whole, these demonstrate that ICE made an individualized determination to detain Catota Pallo before deciding to arrest him.

This case—in which the detention decision was based on an arrest for assault that grew into a conviction—is appreciably distinct from this Court's decision in *Yao v. Almodovar*, where no individualized basis for the detention decision was shown. And ICE's discretionary decision

based on pending criminal charges (later a conviction) aligns with its actions in numerous cases, in which it has based individualized custody determinations, and/or lodged detainers in anticipation of pursuing immigration custody, on the basis of criminal charges—pending or past—against the noncitizen. *See, e.g.*, *Martinez-Lopez v. Reid*, No. 26 Civ. 2893 (PAE), 2026 WL 1133933, at *3–4 (S.D.N.Y. Apr. 27, 2026) (ICE exercised discretion when it detained petitioner following recent arrest for criminal obstruction of breathing and harassment); *Sharifzoda v. Orange Cnty. Jail*, No. 26 Civ. 2486, 2026 WL 851378, at *1 (S.D.N.Y. Mar. 27, 2026) (same where petitioner was detained following arrest for "domestic violence-related assault"); *Li v. Noem*, No. 26 Civ. 989, 2026 WL 366849, at *1 (S.D.N.Y. Feb. 10, 2026) (same where petitioner was detained following arrest for prostitution and drug possession); *Jimenez v. Joyce*, No. 26 Civ. 429, 2026 WL 251889, at *1 (S.D.N.Y. Jan. 30, 2026) (finding, where petitioner possessed numerous past convictions for drunk driving, ICE exercised discretion in effecting detention despite absence of new charges); *E.A.C.F. v. Areta*, No. 26 Civ. 3047, 2026 WL 1213414, at *4 (S.D.N.Y. May 4, 2026) (same); *Adjpop Velasquez v. Arteta et al.*, No. 26 Civ. 5519, 2026 WL 2532334, at *1 (S.D.N.Y. Aug. 27, 2026) (similar).

Finally, having found Catota Pallo was detained under § 1226(a), with an individualized basis for a custody determination, the Court takes up whether he is entitled to a bond hearing. The Court's decision in *Adjpop Velasquez* dictates the outcome here. There, the Court held, consistent with the vast majority of courts in this District, that due process requires that, under § 1226(a), a noncitizen taken into custody:

> is entitled to a prompt bond hearing consistent with due process "at which the Government bears the burden of proving, by clear and convincing evidence, that [he] is a danger to the community or a flight risk." *Guedez v. Catletti*, No. 26 Civ. 2463, 2026 WL 962575, at *2 (S.D.N.Y. Apr. 9, 2026). Under federal regulations, noncitizens "detained under § 1226(a) receive bond hearings *at the outset of detention*." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R.

> §§ 236.1(d)(1), 1236.1(d)(1)) (emphasis added); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022) (same).

*Id*. at *7.

At the bond hearing, ICE will be at liberty to establish—and Catota Pallo will be at liberty to refute—that he presents a danger to the community and/or a risk of flight. *See, e.g.*, *Sharifzoda*, 2026 WL 851378, at *1–2 (finding petitioner detained under § 1226 and ordering bond hearing, where ICE exercised discretion to detain petitioner based on arrest for domestic violence); *Guachambala v. Lyons*, No. 26 Civ. 1835, 2026 WL 686154, at *2–3 (S.D.N.Y. Mar. 10, 2026) (same where ICE detained petitioner based on pending drunk driving charges); *Gunduzalp v. Joyce*, No. 26 Civ. 2330, 2026 WL 948736, at *3–4 (S.D.N.Y. Apr. 8, 2026) (same where ICE detained petitioner based on receiving credible tip that he posed public safety risk).

## CONCLUSION

For the above reasons, the Court grants Catota Pallo's petition for a writ of habeas corpus, insofar as the petition seeks a bond hearing, but denies the petition, insofar as it seeks his immediate release.

By **September 11, 2026**, an IJ shall hold a bond hearing, at which the Government shall bear the burden of proving, by clear and convincing evidence, that Catota Pallo is a danger to the community or a flight risk. In determining whether to grant bond, the IJ shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring. In determining the amount of any bond imposed, the IJ shall consider Catota Pallo's ability to pay.

Within 48 hours of the bond hearing, the Government shall file a letter on the docket of this case stating the outcome of the hearing. It shall also promptly order a transcript or recording of the hearing, and file such on the docket.

Dated: September 4, 2026
New York, New York

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge